# 23-7492

# United States Court of Appeals
### for the
# Second Circuit

———————————————

J.C.,

*Plaintiff*,

DANIEL W. ISAACS and PETER J. GLEASON,

*Respondents-Appellants*,

*v.*

ROBERT ALLEN ZIMMERMAN A/K/A BOB DYLAN,

*Defendant-Appellee*.

———————————————

ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF NEW YORK
THE HONORABLE KATHERINE POLK FAILLA / NO. 22-CV-00323

———————————————

## BRIEF FOR DEFENDANT-APPELLEE

———————————————

Orin Snyder
Brian Ascher
Jeremy Bunting
Alexandra Perloff-Giles
Carolyn Ye
GIBSON, DUNN & CRUTCHER LLP
200 Park Avenue
New York, NY 10166
Tel: (212) 351-2427
*Attorneys for Defendant-Appellee*

# TABLE OF CONTENTS

INTRODUCTION ..................................................................................................1

COUNTERSTATEMENT OF ISSUES PRESENTED.............................................5

COUNTERSTATEMENT OF THE CASE................................................................6

    I.     Appellants File The Complaint In Search Of A Quick Payout.............6

    II.    Appellants Repeatedly Promise Discovery Responses, Grant
          Themselves Unilateral Extensions, And Still Fail To Deliver,
          Prompting The District Court To Grant Mr. Dylan's Motion To
          Compel ......................................................................................................7

    III.   Appellants Fail To Produce Documents And The District Court
          Again Orders Them To Comply With Their Discovery
          Obligations ............................................................................................11

    IV.   Appellants Misrepresent To The District Court That Plaintiff
          "Discharged" Them................................................................................15

    V.    Plaintiff Dismisses The Action After Appellants Admit Plaintiff
          Did Not Voluntarily Discharge Them And They Never
          Collected Or Reviewed Thousands Of Pages Of Documents.............15

    VI.   The District Court Awards Sanctions Against Appellants For
          Their "Noncompliance With The Court's Discovery Orders" ...........17

SUMMARY OF ARGUMENT ..............................................................................20

STANDARD OF REVIEW ...................................................................................23

ARGUMENT .........................................................................................................24

    I.     The District Court Properly Exercised Its Discretion In
          Sanctioning Appellants ........................................................................24

          A.    The District Court Did Not Abuse Its Discretion In
                Concluding All Relevant Factors Weighed In Favor of
                Sanctions Here .........................................................................24

          B.    Appellants Clearly Violated A Court Order .............................27

# TABLE OF CONTENTS

Page(s)

II.   The District Court Did Not Abuse Its Discretion In Holding That Mr. Isaacs And Mr. Gleason Share Responsibility For Their Discovery Failures .......................................................31

III.  Appellants Were Accorded Due Process Before Sanctions Were Imposed ..............................................................................34

IV.  The District Court Did Not Abuse Its Discretion In Imposing A Sanctions Award Appellants Argue Is "Unjust" ................................39

CONCLUSION ....................................................................41

INTRODUCTION ...................................................................1

COUNTERSTATEMENT OF ISSUES PRESENTED ..........................................5

COUNTERSTATEMENT OF THE CASE ...............................................6

I.   Appellants File The Complaint In Search Of A Quick Payout ............6

II.   Appellants Repeatedly Promise Discovery Responses, Grant Themselves Unilateral Extensions, And Still Fail To Deliver, Prompting The District Court To Grant Mr. Dylan's Motion To Compel ......................................................................7

III.  Appellants Fail To Produce Documents And The District Court Again Orders Them To Comply With Their Discovery Obligations ...............................................................11

IV.  Appellants Misrepresent To The District Court That Plaintiff "Discharged" Them ..............................................................15

V.   Plaintiff Dismisses The Action After Appellants Admit Plaintiff Did Not Voluntarily Discharge Them And They Never Collected Or Reviewed Thousands Of Pages Of Documents .............15

VI.  The District Court Awards Sanctions Against Appellants For Their "Noncompliance With The Court's Discovery Orders" ...........17

SUMMARY OF ARGUMENT ...........................................................20

ii

# TABLE OF CONTENTS

Page(s)

STANDARD OF REVIEW ....................................................23

ARGUMENT ....................................................................24

    I.    The District Court Properly Exercised Its Discretion In
Sanctioning Appellants ............................................24

        A.    The District Court Did Not Abuse Its Discretion In
Concluding All Relevant Factors Weighed In Favor of
Sanctions Here .............................................24

        B.    Appellants Clearly Violated A Court Order ...........................27

    II.    The District Court Did Not Abuse Its Discretion In Holding
That Mr. Isaacs And Mr. Gleason Share Responsibility For
Their Discovery Failures ....................................31

    III.    Appellants Were Accorded Due Process Before Sanctions Were
Imposed ..........................................................34

    IV.    The District Court Did Not Abuse Its Discretion In Imposing A
Sanctions Award Appellants Argue Is "Unjust" .................39

CONCLUSION ....................................................................41

iii

# TABLE OF AUTHORITIES

Page(s)

## Cases

*Abdu-Brisson v. Delta Air Lines, Inc.*,
239 F.3d 456 (2d Cir. 2001) ...............................................26

*Agiwal v. Mid Island Mortg. Corp.*,
555 F.3d 298 (2d Cir. 2009) ...............................................24

*Bolger v. District of Columbia*,
248 F.R.D. 339 (D.D.C. 2008) .......................................27, 28

*Daval Steel Prods. v. M/V Fakredine*,
951 F.2d 1357 (2d Cir. 1991) .....................23, 24, 29, 39, 40

*Fonar Corp. v. Magnetic Resonance Plus, Inc.*,
128 F.3d 99 (2d Cir. 1997) ...............................................34

*Friedman v. Radujko*,
854 F. App'x 390 (2d Cir. 2021) .......................................36

*Int'l Ore & Fertilizer Corp. v. SGS Control Servs., Inc.*,
38 F.3d 1279 (2d Cir. 1994) ...............................................37

*Kyros Law P.C. v. World Wrestling Entmt., Inc.*,
78 F.4th 532 (2d Cir. 2023) .........................................23, 26

*Lambert v. Jariwala & Co.*,
2022 WL 2439861 (D.N.J. Apr. 28, 2022).........................31

*Marsh USA, Inc. v. Millett*,
2023 WL 5390436 (S.D.N.Y. Aug. 22, 2023)....................29

*Martin v. Giordano*,
185 F. Supp. 3d 339 (E.D.N.Y. 2016) ..............................35

*Nat'l Hockey League v. Metro Hockey Club, Inc.*,
427 U.S. 639 (1976) (per curiam)................................23, 24

*Naviant Mktg. Sols., Inc. v. Larry Tucker, Inc.*,
339 F.3d 180 (3d Cir. 2003) ...............................................31

*Rossbach v. Montefiore Med. Ctr.*,
81 F.4th 124 (2d Cir. 2023) ...............................................34

iv

# TABLE OF AUTHORITIES
*(continued)*

Page(s)

*S. New England Tel. Co. v. Glob. NAPs Inc.*,
624 F.3d 123 (2d Cir. 2010) ...........................................................23, 24, 25, 41

*Salahuddin v. Harris*,
782 F.2d 1127 (2d Cir. 1986) ...................................................................28, 29

*Schlaifer Nance & Co. v. Estate of Warhol*,
194 F.3d 323 (2d Cir. 1999) ...................................................................35, 36, 37

*Sieck v. Russo*,
869 F.2d 131 (2d Cir. 1989) ..............................................................................23

*Smith v. Conn. Dep't of Corr.*,
644 F. App'x 1 (2d Cir. 2016) ..........................................................................29

*Sterling Promotional Corp. v. Gen. Accident Ins. Co. of N.Y.*,
86 F. App'x 441 (2d Cir. 2004) .........................................................................36

*Stuart I. Levin & Assocs., P.A. v. Rogers*,
156 F.3d 1135 (11th Cir. 1998) ........................................................................34

*Sullivan-Blake v. FedEx Ground Package Sys., Inc.*,
2021 WL 3563388 (W.D. Pa. Aug. 12, 2021)...................................................31

*Susana v. NY Waterway*,
662 F. Supp. 3d 477 (S.D.N.Y. 2023) ..............................................................29

*Thomas E. Hoar, Inc. v. Sara Lee Corp.*,
900 F.2d 522 (2d Cir. 1990) ..............................................................................39

*In re Yellen & Herstic*,
804 F.2d 191 (2d Cir. 1986) ..............................................................................34

**Rules**

Rule 37 .....................................................................................................*passim*

## INTRODUCTION

In August 2021, Appellants Daniel Isaacs and Peter Gleason filed a Complaint making heinous and false allegations against Bob Dylan, one of the most beloved and influential figures in the history of American music and culture. In a pleading Mr. Isaacs purported to verify personally, Appellants alleged Mr. Dylan had engaged in child abuse 56 years ago against Appellants' client, Plaintiff "J.C." The allegations were utterly and completely false—and the product of a patently inadequate pre-suit investigation. Yet, for over a year, Mr. Dylan was forced to litigate this action both in the district court and in the media, until third-party discovery adduced evidence that resulted in Plaintiff withdrawing her action in full and with prejudice. Mr. Dylan had to procure that critical discovery from third parties—and not Plaintiff—because Plaintiff and her counsel violated multiple discovery rules and court orders. After conducting two hearings and giving Appellants three warnings for their obstructive failure to comply with their discovery obligations, on September 28, 2023, the district court (Failla, *J.*), sanctioned counsel and ordered them to pay Mr. Dylan $8,000—a "modest" sum that pales in comparison to the damage their actions caused to Mr. Dylan both in and out of court. The district court's 29-page decision was well-reasoned and fully justified. And the sanctions order was overwhelmingly supported and ultimately quite modest in

amount. The district court's exercise of its sound discretion to sanction Appellants should be affirmed.

Appellants' misconduct began at the inception of this case. Appellants launched their Complaint—which Mr. Isaacs purported to personally verify, JA043—even though the most rudimentary investigation would have revealed the claims to be false. Counsel did not, for example, attempt to speak to any of Plaintiff's siblings (including one who shared a room with Plaintiff during the relevant period), who would have told them that Plaintiff's allegations were untrue. They apparently did not even review Mr. Dylan's widely available 1965 touring schedule, which would have revealed he was on tour in California, British Columbia, and the United Kingdom for almost the entirety of April and May 1965, when the alleged conduct took place. Lastly, and most critically to the sanctions award against them, Appellants admitted to the district court they did not even collect, let alone review, over a thousand pages of documents in Plaintiff's possession that purportedly related to Mr. Dylan—not before they filed the action, and not at any point after, despite multiple orders from the district court directing Appellants to produce documents. Had they reviewed the documents, they would have learned facts that, as the district court found, "call into question the veracity of Plaintiff's allegations in her complaint." SA06–07.

Appellants' most egregious discovery failure was their refusal to produce documents in violation of the district court's explicit orders. Mr. Isaacs and Mr. Gleason repeatedly requested extensions of their deadline and promised that they were "working away" on their obligations. As the district court recognized, "Defendant extended numerous courtesies to Plaintiff's Attorneys early on in the discovery process," and served discovery requests that were "relevant and proportional to the needs of the case." SA025. But after weeks of Mr. Isaacs' and Mr. Gleason's failed and broken promises, Mr. Dylan was forced to seek the district court's intervention. On May 24, 2022, the district court ordered Appellants to provide discovery responses by May 30, 2022—by that point over a month late. They did not do so. SA020.

Mr. Dylan, however, kept trying to avail himself of the discovery he would later use to vindicate his innocence. It took almost four months, numerous letters to the district court, and two explicit orders from the district court directing Appellants to turn over documents before Appellants produced even a single document. When that production finally came—nearly one year into the litigation—it was woefully insufficient and did not contain critical documents Mr. Dylan knew existed because he had received them through third-party discovery, including from Plaintiff's own siblings.

Recognizing the seriousness of Appellants' discovery misconduct, on July 15, 2022, the district court ordered Plaintiff and her counsel to produce by July 22, 2022 all documents responsive to Mr. Dylan's First Set of Requests for Production, which had been served in March. At a conference with the parties that same day, the district court warned it would entertain a motion for sanctions if Plaintiff and Appellants failed to produce the documents.

Instead, just three days before the district court-ordered deadline, Appellants filed a letter falsely claiming Plaintiff had "discharged" them. On July 28, 2022, the district court convened a conference to discuss the purported "discharge." Appellants admitted they had tried to terminate their representation when, according to Mr. Gleason, Plaintiff would not allow them to review several boxes of documents Appellants had apparently never sought to review in the months prior. Minutes later, Plaintiff voluntarily dismissed the suit with prejudice.

Mr. Dylan was subjected to almost a year of litigation—facing the most vile allegations imaginable—during which Appellants engaged in a pattern of deliberate discovery misconduct that hindered Mr. Dylan's ability to fight this false claim. As the district court recognized, "the record discloses nothing to support Plaintiff's claims of abuse, and a fair amount of evidence to undermine them." SA028. Given that ordeal, and the damage done to him in defending against Appellants' spurious complaint, Mr. Dylan moved for Rule 37 sanctions following the action's

4

"spectacular failure." SA019. On September 28, 2023, the district court issued an order sanctioning Appellants under Rule 37 for "repeated noncompliance with the Court's discovery orders," SA001, and awarded Mr. Dylan $8,000—an amount that is essentially symbolic and "a fraction of the fees and expenses incurred by" Mr. Dylan. SA024.[1]

Now, Appellants bring this appeal in a last-ditch effort to get away scot-free. They offer no coherent defense of their actions. Nor do they come close to showing the district court abused its discretion or made clearly erroneous factual findings when it ordered them to pay a mere $8,000 after the many months of discovery violations and fabrications that plagued this entire case from the start. Each of Appellants' four arguments should be rejected and the district court's order affirmed.

## COUNTERSTATEMENT OF ISSUES PRESENTED

1. Whether the district court appropriately exercised its discretion in imposing sanctions on Mr. Isaacs and Mr. Gleason for their repeated violations of its discovery orders over a period of multiple months.

2. Whether the district court's finding that Mr. Isaacs and Mr. Gleason each personally violated discovery orders was clearly erroneous.

---

[1] As the district court recognized, Mr. Dylan did *not* seek sanctions directly from Plaintiff, "who is a troubled woman." SA028. "Defendant's decision not to pursue sanctions against Plaintiff [w]as a kindness to her," which the district court "appreciate[ed] as such." SA018.

**3.** Whether the district court provided Mr. Isaacs and Mr. Gleason adequate notice and an opportunity to be heard before sanctions were imposed, where the court held multiple hearings on their discovery misconduct, issued repeated warnings, and reviewed fulsome briefing.

**4.** Whether sanctions awards of $5,000 against Mr. Isaacs and $3,000 against Mr. Gleason are just in light of their extensive discovery misconduct and the prejudice caused to Mr. Dylan.

## COUNTERSTATEMENT OF THE CASE

### I. Appellants File The Complaint In Search Of A Quick Payout

On August 13, 2021, Appellants filed a Complaint alleging that "over a six-week period between April and May of 1965," Mr. Dylan "befriended and established an emotional connection with plaintiff, J.C., to lower her inhibitions with the object of sexually abusing her, which he did." JA017 ¶ 1. The Complaint generated significant media coverage. Appellants surely knew it would, as Mr. Dylan is one of the most famous public figures on the planet and, until this case, had never been accused of such misconduct by anyone.

After the initial round of press coverage, not a single other accuser stepped forward. Widely published reports cast serious doubt on the allegations. *See, e.g.*, JA208–11 (Aug. 19, 2021 *Rolling Stone* article reporting "[i]t is almost impossible to find one week—let alone six—that spring when Dylan could have been staying at

the Chelsea Hotel," where the Complaint alleged the abuse occurred). Appellants persisted in seeking a multimillion-dollar payout from Mr. Dylan under threat of further negative publicity arising from the lawsuit, which generated media attention with each new filing.

## II. Appellants Repeatedly Promise Discovery Responses, Grant Themselves Unilateral Extensions, And Still Fail To Deliver, Prompting The District Court To Grant Mr. Dylan's Motion To Compel

On January 6, 2022, Mr. Dylan answered the Complaint. JA046. The parties proposed a Case Management Order a few months later. On March 18, 2022, the district court held a preliminary conference to discuss the case. At that conference, the district court stated it would endorse the parties' Case Management Order, and directed the parties to "get started on your discovery," noting it was "not very interested in extending discovery deadlines." JA084 at 15:8–12. With that guidance in mind, Mr. Dylan served his First Set of Requests for Production and First Set of Interrogatories that same day, with Plaintiff's responses due on April 18, 2022. *See* JA085. Appellants waited until April 18—the day Plaintiff's responses were due— to request a two-week extension, to Monday, May 2. JA226. As a courtesy, Mr. Dylan consented. *See* JA085. On Thursday, April 28, 2022, counsel for Mr. Dylan reached out to Appellants to confirm that Plaintiff's discovery responses would be

sent on May 2. *Id.* Appellants confirmed they would provide "our initial responses . . . by Monday [May 2], also as promised." *Id.*

Appellants did not deliver the promised responses on May 2. Rather, for the next two weeks, Mr. Isaacs repeatedly assured counsel he was "working away" and would serve responses "in the next day or two," only to fail to deliver and instead demand more time. JA085–86. After more than half a dozen of these unilateral extensions and following Mr. Dylan's "extend[ing] numerous courtesies," SA025, it was obvious Appellants would never provide the discovery responses without court intervention. To that end, Mr. Dylan wrote to the district court on May 16, 2022, nearly a month after the responses were due, to request the district court compel Appellants' compliance. *Id.*

Mr. Isaacs filed a response on May 23, 2022, admitting he "had promised to provide responses but failed to do so." JA087. Mr. Isaacs blamed this failure on competing professional obligations and a trip he took to Ghana. *Id.* He stated without explanation that he required an *additional week*, until May 30, 2022, to provide the responses. *Id.* He requested the additional seven-day extension despite the fact that he had been telling Mr. Dylan's counsel for weeks that Plaintiff's responses were nearly complete and only required one additional day to finalize. JA085–86.

8

On May 24, 2022, the district court ordered Appellants to serve responses to Mr. Dylan's initial interrogatories and requests for production by May 30, 2022, the date Mr. Isaacs had requested. JA088. The order also "cautioned that future failures to meet the discovery deadlines set forth in the parties' case management plan or this Court's rules of individual practice will not be tolerated." *Id.*

Appellants violated the May 24 order. They did not produce timely discovery responses and documents. SA020 (district court making factual finding that "Plaintiff (and, by extension, her Attorneys) did not comply with the Court's May 24 Order; while Plaintiff produced certain responses one day late, on May 31, 2022, she failed to produce nearly all responsive documents in her possession . . . ."). Instead, Appellants served incomplete and substantively deficient responses to Mr. Dylan's First Set of Interrogatories that omitted requested and relevant information, including, *e.g.*, when Plaintiff's psychological injuries allegedly manifested, the contact information for various witnesses, and information regarding Plaintiff's medical history and treatment. JA233–34. And they failed to provide any responses at all to Mr. Dylan's First Requests for Production. *See* JA089–90.

Mr. Dylan wrote the district court on May 31, 2022, to request a discovery conference regarding the still-missing responses. *Id.* Later that day, Appellants finally provided (similarly deficient) boilerplate responses to Mr. Dylan's Requests for Production. As yet another courtesy, Mr. Dylan withdrew his request for a

conference while he evaluated Appellants' responses. *See* JA091. On June 2, 2022, the district court issued an order acknowledging "Plaintiff's noncompliance with the discovery orders in this case," and warning that if "Plaintiff continues to neglect her responsibilities in this case, the district court will take appropriate action at that time." JA092.

Rather than involve the court immediately to address Appellants' deficient discovery responses, Mr. Dylan endeavored to work with Appellants to push discovery forward. To that end, on June 8, 2022, Mr. Dylan wrote a letter to Appellants with a detailed explanation regarding how to bring the responses into compliance. JA232–34. In that letter, Mr. Dylan provided a bulleted list of the information missing from each of Plaintiff's Interrogatory responses, explained the deficiencies in Plaintiff's responses to his First Request for Production, and, lastly, pleaded with Appellants to review and produce their client's emails and other communications. *Id.*

Appellants' discovery misconduct nonetheless continued. In further violation of the district court's May 24 and June 2, 2022 orders, by mid-June 2022 Appellants still had not given any indication of when they would actually produce Plaintiff's documents. Mr. Dylan, on the other hand, had conducted an extensive review of his archives and produced essentially every document, photograph, and scrap of paper dating to spring 1965 or otherwise related to issues raised in the Complaint. Mr.

10

Dylan had also, on June 1, 2022, produced approximately 60 relevant emails to and from Plaintiff, which he had obtained via third-party subpoenas, including to Plaintiff's siblings. JA129.

At Mr. Dylan's request, the parties met and conferred on June 16, 2022 regarding the interrogatory deficiencies and Appellants' failure to produce documents. *See* JA236. At the meet-and-confer, Mr. Dylan agreed to (generous) continued deadlines for Plaintiff's outstanding discovery obligations, the most crucial of which being that Plaintiff would produce substantially all documents responsive to Mr. Dylan's First Set of Requests for Production by June 30, 2022. *Id.*

## III. Appellants Fail To Produce Documents And The District Court Again Orders Them To Comply With Their Discovery Obligations

Appellants blew past the June 30, 2022 document production deadline. That day, Appellants sent only a single PDF containing a paltry 49 pages of materials. *See* JA094. The PDF itself consisted of several incoherent letters Plaintiff had written to various publications, entertainment executives, and even a U.S. Senator regarding Mr. Dylan, the poet Allen Ginsberg, Elvis Presley, and other public figures.[2] Many of the pages were cut off or illegible as a result of Appellants

---

[2] Plaintiff repeated several of the most outlandish claims from these letters, including that a recording of one of her imagined meetings with Mr. Dylan was broadcast on the radio, and that Sony altered the artwork for one of Mr. Dylan's albums at her request (it did not), in correspondence to the district court following the dismissal of her suit. *See* JA298–99; JA301.

carelessly scanning hard copy documents. Because the pages were not Bates-stamped or otherwise marked, it was impossible to tell where one document ended and another began.

On July 1, 2022, Mr. Dylan filed a letter with the district court requesting a conference about the state of discovery. Mr. Dylan's letter stated that no reasonable attorney could have brought the case based on these materials, which raised serious concerns about Plaintiff's competency and cast further doubt on the veracity of her claims. JA093–95. Mr. Dylan informed the Court that what was *missing* from Appellants' paltry document production raised even more serious concerns. Appellants' production included no emails, text messages, or other electronic communications—not even the many emails to and from Plaintiff that Mr. Dylan acquired from third parties and had provided to Plaintiff a full month earlier, on June 1, 2022. JA094. Mr. Dylan believed these stark omissions confirmed Appellants had never collected or reviewed Plaintiff's emails or text messages, despite being on notice for months—since at least *March 18, 2022*—that Mr. Dylan was demanding relevant electronic communications. If Appellants had, they would have learned that Plaintiff was confronted via email by her own siblings regarding the obvious impossibilities in her story. *See* JA327–413. Plaintiff made a series of incoherent and fantastical claims in response, which completely undermined her credibility. JA341–42.

12

In response to Mr. Dylan's letter, the district court held a conference on July 15, 2022.  After the district noted its disappointment with the progress of discovery, Mr. Isaacs represented that "once I give [defense counsel] these last few text messages, which I just received, we have nothing other, at this point, to provide." JA103 at 4:7–9.  Mr. Dylan's counsel then explained that Mr. Dylan had taken a deposition the day before, on July 14, 2022, and Mr. Isaacs "with his own eyes, saw—because I offered into evidence—dozens of emails with his client.  So how he can tell this Court right now in a representation that there are one or two . . . is of concern." JA112–13 at 13:24–14:5.  The district court asked Mr. Isaacs point-blank whether his failure to produce emails with the initial production was "because you didn't understand that they existed or because you understood that they existed, but there was difficulty in retrieving them." JA105 at 6:4–7.  Mr. Isaacs was forced to acknowledge it was the former: "I didn't realize at the time she had them." *Id.*

Mr. Isaacs then pivoted, blaming Appellants' failure to collect, review, or produce Plaintiff's communications on the fact that he is "a solo practitioner" and was busy with a trial earlier in the year.  JA113–14 at 14:22–15:2.  Mr. Isaacs did not explain why Mr. Gleason, his co-counsel, had been unable to handle the document collection, or why Mr. Isaac's trial justified a *four-month* delay in even *collecting* Plaintiff's electronic communications—let alone why he had failed to mention his purported trial before.  As the district court stated during the conference,

13

"[i]f you believed that you needed more time because of the specifics of your practice, that's something you should have told me about some time ago." JA116–17 at 17:24–18:1.

Recognizing the inconsistency in Mr. Isaacs' representations, the district court then asked him, "[h]ow are you comfortable representing to me this morning that your client gave you a couple [communications] that you will be producing, knowing that there were these others out there?" JA114–15 at 15:23–16:2. Mr. Isaacs dissembled, stating that Plaintiff "has a lot of emotional issues," and promising to "personally go there, go through every single email," but did not explain his obvious misrepresentation to the district court minutes earlier that only a "few text messages" remained to be produced. JA115 at 16:6–16.

At the conclusion of the hearing, the district court provided a stern rebuke based on Appellants' repeated violations of the court's orders:

> The problem that I have is, at some point, I actually have to abide by the written warnings that I give, and so I've tried, as hard as I can, to give you latitude and space to work out these discovery issues, but at some point, I'm just going to come to believe that you are not abiding by my orders . . . .

JA117 at 18:6–20. Later that day, the district court entered the July 15 Order. JA123. It directed Plaintiff to produce all documents responsive to Mr. Dylan's First Requests for Production by July 22, 2022. JA123 ¶ 1.

14

## IV.   Appellants Misrepresent To The District Court That Plaintiff "Discharged" Them

Appellants did not comply with the district court's July 15 order.  Instead, on July 19, 2022, Appellants filed a letter with the district court stating that they had "been discharged by the Plaintiff as her attorneys in the above referenced matter." JA124.  Mr. Dylan wrote the district court the next day, noting that Appellants' letter was alarming for multiple reasons.  JA125.  First, it did not comply with the requirements for withdrawal under the district court's Local Rules.  Second, and most importantly, "[t]he timing of counsel's letter, coming on the heels of last Friday's conference, . . . appears designed to evade Court-ordered document production obligations and the threat of sanctions."  JA125.

The district court promptly set an in-person conference for the following week, on July 28, 2022.  JA128.  Meanwhile, the July 22, 2022 document production deadline passed without Plaintiff or Appellants producing a single additional document and with Appellants remaining counsel of record.

## V.   Plaintiff Dismisses The Action After Appellants Admit Plaintiff Did Not Voluntarily Discharge Them And They Never Collected Or Reviewed Thousands Of Pages Of Documents

At the July 28, 2022 conference, the district court confirmed that Appellants remained counsel of record.  JA132 at 2:21–22 ("From my perspective, there wasn't a discharge from me.").  The district court also stated that "it wasn't quite clear to me that the obligations and the deadlines, to which you agreed, were now suddenly

15

by the boards," and that the district court did not "like feeling as though I am being played." JA132–133 at 2:24–3:1.

Despite only ever producing a single PDF file containing 49 pages of largely incomprehensible letters apparently authored by Plaintiff, Mr. Isaacs represented at the conference that "before the commencement of this action" he had "asked repeatedly to be provided both documents and information so I could review it, in addition to doing my own research." JA133 at 3:21–24. Minutes later, however, he represented that he and Mr. Gleason had waited until July 18, 2022—the Monday after the July 15 Order—to travel to Plaintiff's residence and finally review his client's computer and discuss with her how to comply with Mr. Dylan's requests. JA135 at 5:15–24. Appellants' trip to Plaintiff's house, review of her computer, and counseling on compliance occurred some *four months* after Mr. Dylan had served his Requests for Production and *two months* after the district court's May 24 order directed Appellants to provide discovery.

Mr. Gleason spoke at the July 28 conference next. He claimed he traveled to Plaintiff's residence to collect documents on July 19, 2022, but Plaintiff handed him "a paper file" containing only "a few documents." JA137 at 7:2–7. Mr. Gleason stated he told Plaintiff he knew there must be more documents, as Mr. Dylan had produced "a large amount of emails that [Plaintiff] shared with [her] sister," at which point Plaintiff apparently "pointed to . . . three boxes on the floor." *Id.* at 7:6–9. Mr.

16

Gleason said each of these boxes appeared to contain hundreds of pages of material, which Plaintiff told him she had "kept regarding the Dylan matter." *Id.* at 7:10–16.

According to Mr. Gleason, Plaintiff would not turn over the documents because "she would be embarrassed of the contents." JA138 at 8:1–2. Mr. Gleason said he told Plaintiff at that point, "you have two choices. Either Mr. Isaacs and myself are going to make a motion to the Court to withdraw as your counsel, because you're not cooperating with us, or B, you can terminate our services." JA138–39 at 8:25–9:3. Mr. Gleason admitted Plaintiff did not choose to "discharge" counsel, notwithstanding the representation Appellants made in their July 19, 2022 letter to the district court that they "ha[d] been discharged by the Plaintiff as her attorneys." JA124.

After conferring with Mr. Isaacs and Mr. Gleason during a recess, Plaintiff agreed to dismiss the action with prejudice. JA165 at 35:11–25. The district court acknowledged the dismissal "may not moot all of the issues" and invited Mr. Dylan to "let me know if there's anything left for me to do." JA166 at 36:6–15.

## VI.  The District Court Awards Sanctions Against Appellants For Their "Noncompliance With The Court's Discovery Orders"

On October 3, 2022, Mr. Dylan filed a motion for sanctions against Mr. Isaacs and Mr. Gleason under Rule 37(b)(2) with the Court's permission. JA167–69, 175. In his motion, Mr. Dylan sought a $50,000 sanction as well as fees and costs associated with bringing the motion on the basis that Appellants had repeatedly

violated the district court's discovery orders despite numerous warnings that they would face consequences for doing so. JA182. Mr. Dylan did not seek sanctions against Plaintiff herself. JA179. On September 28, 2024, the district court granted the motion, awarding sanctions against Appellants for their "repeated noncompliance with the Court's discovery orders." SA001. In its 29-page order, the district court detailed Appellants' many violations of its discovery orders, most significantly Appellants' failure to produce documents in violation of the district court's May 24 and June 1, 2022 orders. *See generally* SA005–10. The district court also acknowledged the significance of these missing documents to the merits of Plaintiff's claims. Of the set of Plaintiff's emails that Mr. Dylan had been able to obtain from third parties, the district court noted, "the Court agrees with the defense that they call into question the veracity of Plaintiff's allegations in her complaint." SA006–07.

The district court rejected Appellants' effort to "throw [their] client under the proverbial bus" and recognized Appellants' culpability for their failure to search for and produce documents. SA012–13. "[A]s their 49-page production attests, Plaintiff's Attorneys made no effort to review Plaintiff's accounts for responsive emails or texts, and as such continued to be in violation of the Court's May 24 Order." SA021. As further evidence of Appellants' failure to search for documents in violation of the May 24, 2024 order, it noted:

18

At any time before the July 15 conference, Plaintiff's Attorneys could have addressed this issue with their client and complied with their obligations under the Court's May 24 Order. Instead, counsel disclosed at the July 15 conference that, a few days prior to the conference, his client had provided him with "one or two emails and a couple of text messages" — as if the prior seven weeks of tussling over what all sides understood to be a trove of responsive emails in Plaintiff's possession had never happened. Once again, Plaintiff's Attorneys acknowledged the shortcomings in their compliance with Court orders, but no real progress was made.

SA021–22.

The Court further found that as a result of Appellants' failures, "Defendant was indisputably prejudiced." SA022. Mr. Dylan was forced to take depositions without relevant documents and to rely on third-party discovery "to confirm that the discovery that Plaintiff and her Attorneys were producing was woefully inadequate." SA022–23. The district court also found that Appellants' noncompliance with its orders was willful: "Plaintiff's Attorneys' blasé attitude towards their discovery obligations (and to the Court's May 24 Order in particular) over a period of months, despite multiple directives from the Court, and despite multiple detailed explanations from defense counsel concerning what materials were missing, constitutes willfulness." SA023. As the district court stated, "Defendant should not have been required to explain to Plaintiff's Attorneys what documents Plaintiff had in her possession in order to obtain discovery to which he was entitled." *Id.*

As to the award itself, the district court noted it had considered a limited award of fees and expenses tied to "the period of noncompliance," which began "on May

19

30, 2022, when the Attorneys failed to abide by the Court's May 24 Order, and continued through the Attorneys' withdrawal from the case." SA027. The Court noted that "each of the Attorneys is a sole practitioner, who very likely took this case on a contingency basis," and that "determination of the costs incurred by Mr. Dylan during any period of noncompliance identified by the Court would itself require substantial additional proceedings." SA028–29. The district court then awarded largely symbolic sanctions in the amount of $5,000 against Mr. Isaacs and $3,000 against Mr. Gleason. SA029. Appellants timely appealed.

## SUMMARY OF ARGUMENT

This case was a spurious attack on a beloved American artist and icon that lacked any factual basis and was the product of a patently inadequate pre-suit "investigation." The district court imposed a modest award of sanctions in view of the serious nature of Appellants' misconduct. This Court should affirm the district court's sound exercise of discretion and reject Appellants' four meritless arguments.

*First*, Appellants contend that they did not violate any discovery order. That is false. As the district court found, "[o]n May 24, 2022 – more than a month after Plaintiff's discovery responses were due, and after several failed promises to comply were made by her Attorneys – the Court explicitly ordered Plaintiff and her counsel to serve Plaintiff's responses to Mr. Dylan's interrogatories and document production requests on or before May 30, 2022." SA019–20. Plaintiff's attorneys

20

"bl[ew] past the Court's May 30 deadline." SA021. They then "committed to making a substantial completion of the document production to defense counsel by June 30, 2022," but "made no effort to review Plaintiff's accounts for responsive emails or texts." *Id.* Notwithstanding the highly inflammatory nature of the claims they were seeking to prosecute, Appellants had no sense of the breadth of documents in Plaintiff's possession for nearly one year after the case was filed on August 13, 2021, until they finally went to meet with Plaintiff at her home on July 18, 2022. In short, "Plaintiff's Attorneys' blasé attitude towards their discovery obligations (and to the Court's May 24 Order in particular) over a period of months, despite multiple directives from the Court, and despite multiple detailed explanations from defense counsel concerning what materials were missing, constitutes willfulness," and supports the imposition of sanctions. SA023. Appellants' arguments to the contrary—that the district court orders were not "specific" or "explicit" enough or that their misconduct was merely excusable "sloppiness"—ignore the record and the governing standard of review.

*Second*, Appellants say the district court failed to sufficiently analyze their respective misconduct in apportioning the $8,000 sanctions award between them ($5,000 to Mr. Issacs and $3,000 to Mr. Gleason). That too is wrong. Judge Failla's apportionment of different sanctions awards to each of the two attorneys who represented Plaintiff in this case reflects careful attention to the specific conduct of

each sanctioned attorney. There is nothing clearly erroneous about the district court's determination that, although Mr. Isaacs carried out "first-chair responsibilities," Mr. Gleason "was copied on the relevant correspondence, participated in the relevant conferences, [] appeared in the litigation as co-counsel," and shared personal responsibility for the discovery failures. SA027–28.

*Third*, Appellants argue the district court erred by not holding an evidentiary hearing before awarding sanctions. But as Appellants concede, this Court has repeatedly held that evidentiary hearings are not required before sanctions are imposed. Mr. Isaacs and Mr. Gleason had a 25-page brief and two hearings to defend themselves after the district court raised the specter of sanctions. They cannot credibly claim they lacked notice or an opportunity to be fully and fairly heard before the court imposed sanctions.

*Finally*, Appellants say the district court abused its discretion in imposing sanctions that were "unjust" under Rule 37 and therefore an improper exercise of discretion. The opposite is true. The modest sanctions award—just a fraction of what Mr. Dylan sought and an even smaller fraction of what Mr. Dylan actually spent dealing with the discovery delays and violations caused by Appellants—is entirely justified. As the district court concluded, awarding sanctions in circumstances such as this, where "the party against whom they are imposed was in some sense at fault," is important "to serve a general deterrent effect." SA015

(quoting *S. New England Tel. Co. v. Glob. NAPs Inc.*, 624 F.3d 123, 149 (2d Cir. 2010)).

## STANDARD OF REVIEW

This Court reviews a district court's imposition of sanctions under Rule 37 for abuse of discretion. *See, e.g.*, *Kyros Law P.C. v. World Wrestling Entmt., Inc.*, 78 F.4th 532, 545 (2d Cir. 2023). "[T]he factual findings upon which sanctions are based will not be disturbed unless they are shown to be 'clearly erroneous.'" *Daval Steel Prods. v. M/V Fakredine*, 951 F.2d 1357, 1365 (2d Cir. 1991).

The Supreme Court has recognized that the full range of sanctions "must be available to the district court in appropriate cases, not merely to penalize those whose conduct may be deemed to warrant such a sanction, but to deter those who might be tempted to such conduct in the absence of such a deterrent." *Nat'l Hockey League v. Metro Hockey Club, Inc.*, 427 U.S. 639, 644 (1976) (per curiam). In reviewing an award of sanctions, this Court's task is not "to search, like Goldilocks, for a sanction that is not too hard, not too soft, but one that is just right." *Sieck v. Russo*, 869 F.2d 131, 134 (2d Cir. 1989). Rather, the reviewing court must "play the other role in that story, and provide the teeth to enforce discovery orders by leaving it to the district court to determine which sanction from among the available range is appropriate." *Id.* In other words, it must be "mindful of the Supreme Court's repeated admonition that this standard of review means what it says: that 'the

23

question . . . is not whether [it] would as an original matter have [applied the sanction]; it is whether the District Court abused its discretion in so doing.'" *S. New England Tel. Co. v. Global NAPs Inc.*, 624 F.3d 123, 143 (2d Cir. 2010) (quoting *Nat'l Hockey League*, 427 U.S. at 642).

## ARGUMENT

## I. The District Court Properly Exercised Its Discretion In Sanctioning Appellants

### A. The District Court Did Not Abuse Its Discretion In Concluding All Relevant Factors Weighed In Favor of Sanctions Here

"The discovery provisions of the Federal Rules of Civil Procedure are 'designed to achieve disclosure of all the evidence relevant to the merits of a controversy.'" *Daval*, 951 F.2d at 1365 (citation omitted). In furtherance of that aim, Rule 37 authorizes district courts to impose sanctions, including the payment of expenses, when a party or a party's attorney "fails to obey an order to provide or permit discovery." Fed. R. Civ. P. 37(b)(2). District courts enjoy "wide discretion" in deciding whether to impose sanctions and what sanctions to impose. *Daval*, 951 F.2d at 1365. Factors relevant to the district court's exercise of its discretion—the so-called *Agiwal* factors—include: "(1) the willfulness of the non-compliant party or the reason for noncompliance; (2) the efficacy of lesser sanctions; (3) the duration of the period of noncompliance; and (4) whether the non-compliant party had been warned of the consequences of noncompliance." *S. New England Tel.*, 624 F.3d at 144 (quoting *Agiwal v. Mid Island Mortg. Corp.*, 555 F.3d 298, 302 (2d Cir. 2009)).

24

The imposition of sanctions here based on Mr. Isaacs and Mr. Gleason's failure to obey court orders was an appropriate exercise of the district court's discretion. The May 24, 2022 Order required Plaintiff to serve her long-overdue responses and objections to Mr. Dylan's initial interrogatories and requests for production "on or before May 30, 2022," and "cautioned that future failures to meet the discovery deadlines . . . will not be tolerated." SA006; JA004–05. Appellants nevertheless missed the court-ordered deadline. SA020. The June 2, 2022 Order insisted again on the importance of complying with discovery obligations and warned Appellants that if they "continue[d] to neglect [their] responsibilities in this case, the Court will take appropriate action." JA092. Still, weeks went by before Appellants produced a single document, and the single PDF file amalgamating 49 pages they did eventually produce the day of the substantial completion deadline did not include a *single* email, even though they knew numerous directly relevant and responsive emails existed. *See supra* 11–12.

In considering "the full record in the case," as required, *S. New England Tel.*, 624 F.3d at 144, the district court properly found that each of the *Agiwal* factors supported an award of sanctions against Appellants. SA018–23. Appellants failed to conduct a sufficient pre-suit investigation before filing the inflammatory lawsuit against a public figure, SA028, in which they verified the pleading "as true to [their] own knowledge," JA043, and deliberately engaged in delay tactics when they were

25

directed to produce such evidence; they repeatedly promised discovery responses were imminent and then failed to act, even when warned of the consequences by the district court. SA005–07. This pattern of obstruction endured for several months, even after two separate formal warnings from the district court just days apart. SA005–06, SA021. As the district court found, Mr. Isaacs and Mr. Gleason evinced a "blasé attitude towards their discovery obligations . . . over a period of months, despite multiple directives from the Court, and despite multiple detailed explanations from defense counsel concerning what materials were missing." SA023. Their failure "to make a good-faith effort to comply" with the district court's May 24 and June 2 discovery orders, *Kyros Law*, 78 F.4th at 546, "constitute[d] willfulness" and warranted sanctions. SA023.[3]

---

[3] The July 15 Order required Plaintiff to produce by July 22 all documents responsive to Defendant's first and second sets of requests for production as well as respond to Defendant's second set of requests for production. SA009–10. Although the trial court "decline[d] to predicate sanctions on the July 15 Order," SA022, that Order, too, was violated, and "it is axiomatic that an appellate court may affirm the judgment of the district court on any ground fairly supported by the record." *Abdu-Brisson v. Delta Air Lines, Inc.*, 239 F.3d 456, 466 (2d Cir. 2001). It is undisputed that Appellants provided no further discovery beyond the 49 pages they produced on June 30, 2022, despite having received "a combination" of "texts and emails" from Plaintiff just *prior* to the July 15 court appearance. JA557–59. Producing these documents within their possession prior to the July 15, 2022 Order deadline was clearly not outside of Appellants' control. Mr. Isaacs then submitted a letter to the trial court improperly attempting to withdraw as counsel for Plaintiff before the July 22 deadline, JA124, but made no mention of Appellants' alleged inability to access the three boxes of relevant documents in Plaintiff's possession until the July 28, 2022 hearing—well after the production deadline had passed. JA137 at 7:2–23. *(fn cont'd)*

The district court also considered the efficacy of lesser sanctions and concluded that "the monetary sanction the Court proposes . . . , which is but a fraction of the fees and expenses incurred by Defendant, is at the less severe end of the sanction spectrum." SA024. The district court further found that Appellants' noncompliance with the district court's orders "persisted over a period of weeks, if not months" and "in the face of numerous warnings from the Court." SA024. In short, all of the *Agiwal* factors were properly considered and "support[] the Court's imposition of some sanction on Plaintiff's Attorneys." SA023.

### B.    Appellants Clearly Violated A Court Order

Facing a mountain of evidence supporting the district court's factual findings and appropriate exercise of its discretion, Appellants argue they did not, in fact, violate any court order. That argument is frivolous.

Appellants try to recast their blatant discovery violations as nothing more than "occasion[al]" "slopp[iness]," App. Br. 20, citing cases in which courts permitted "some sloppiness" without issuing sanctions. *Bolger v. District of Columbia*, 248 F.R.D. 339, 347 (D.D.C. 2008) (cited at App. Br. 20 n.48). But in *Bolger*, the district court *did* enter sanctions against the defendant for its discovery violations; it simply declined to issue personal sanctions against the attorneys because the "constant

---

Appellants' continued failure to be transparent about what documents they had and had not collected or tried to collect, and their multiple misrepresentations to their court, further justify the issuance of sanctions.

rotation of defense counsel" undercut any contention that the discovery mistakes were intentional. *Bolger*, 248 F.R.D. at 347. Here, Appellants were the sole attorneys for Plaintiff throughout the case. They filed the case, personally verified the pleading, remained counsel of record throughout the proceedings until the Plaintiff withdrew her claims, and bore the duty for responsibly litigating the action and handling discovery. *S.E.C. v. Shainberg*, which declined to award sanctions based on "trivial" errors in an appendix, is similarly inapposite. 316 F. App'x 1, 3 (2d Cir. 2008). Appellants' sole document production contained a meager 49 pages of materials copied into a PDF file and did not include a single email, including any of the 60 emails Appellants had already known for weeks existed (because they were produced by third parties) and ought to have been produced by Plaintiff. SA007. Appellants' discovery violations, which deprived Mr. Dylan of potentially significant documents when depositions of key witnesses took place, *see* SA022–23, were far from "trivial."

Next, Appellants argue the June 2 Order was not "specific" enough to support sanctions because they "did not set forth any explicit direction for the Plaintiff to produce specific discovery." App. Br. 21. This is obviously wrong. Rule 37 only requires, as Appellants' cited cases confirm, that the sanctioned party violate an explicit—not "implied"—court order "before sanctions are imposed." *Salahuddin v. Harris*, 782 F.2d 1127, 1131–32 (2d Cir. 1986). The case upon which Appellants

rely in support of their "specificity" argument in fact *upheld an award of sanctions* for violation of a discovery order that the sanctioned party complained was "overly broad." *Daval*, 951 F.2d at 1367.[4]  As this Court explained, a district court may impose sanctions for violations of even a broadly worded order, for example directing compliance with a subpoena, provided the information sought is "properly discoverable." *Id.*; *see also, e.g.*, *Smith v. Conn. Dep't of Corr.*, 644 F. App'x 1, 2–3 (2d Cir. 2016) (affirming case-terminating sanctions under Rule 37 after the plaintiff failed to abide by court deadlines for "completion of all discovery").

Here, the district court entered multiple explicit discovery orders that Appellants willfully defied when they failed to provide timely discovery responses or produce documents, or even to conduct a meaningful search for them.  The May 24 Order unambiguously required that responses to requests for production and interrogatories be produced by May 30.  They were not.  The documents sought in those requests were unquestionably "properly discoverable" and should have been

---

[4] Appellants' other cited cases are equally inapposite.  They addressed circumstances where, unlike here, there was no discovery order violated, other than an initial scheduling order, *see Susana v. NY Waterway*, 662 F. Supp. 3d 477, 493 (S.D.N.Y. 2023); *Marsh USA, Inc. v. Millett*, 2023 WL 5390436, at *2 (S.D.N.Y. Aug. 22, 2023), or the discovery orders entered bore little relationship to the discovery violation alleged, *see Salahuddin*, 782 F.2d at 1131–32 (discovery orders ordering a deposition, setting a discovery deadline, and denying a motion to compel a response to certain interrogatories did not imply an order directing the plaintiff to answer particular questions at the deposition).

promptly collected and produced. As the district court explained, "because of Plaintiff's Attorneys' failure to discharge their discovery obligations under the relevant law and this Court's orders," Mr. Dylan was forced to issue third-party subpoenas and collect information from outside sources. SA022–23. The emails collected from those outside sources "were both extremely relevant to this litigation and responsive to Defendant's requests for production," SA020, and "confirm[ed] that the discovery that Plaintiff and her Attorneys were producing was woefully inadequate." SA022–23.

Finally, Appellants argue "the lower court had no basis for concluding that the Plaintiff's Attorneys were not communicating with their client from May 24 through July 14 about her need to search for and produce documents." App. Br. 27. But the district court's factual finding was not clearly erroneous. Mr. Isaacs himself admitted at the July 15 hearing that he "didn't realize" any texts or emails existed, putting the lie to the suggestion that the problem was obtaining documents from a recalcitrant client. JA105 at 8:8–9. And again, both Mr. Isaacs and Mr. Gleason had been made aware of dozens of responsive emails as of June 1, 2022, weeks before they claimed not to know that any relevant emails existed. SA006.

In short, the district court imposed explicit orders directing discovery responses and appropriately exercised its discretion in imposing a modest sanctions award against Mr. Isaacs and Mr. Gleason for their violation of those orders.

30

II.    **The District Court Did Not Abuse Its Discretion In Holding That Mr. Isaacs And Mr. Gleason Share Responsibility For Their Discovery Failures**

Appellants' half-hearted argument that the district court did not adequately describe the specific acts of misconduct Mr. Isaacs and Mr. Gleason individually committed fares no better.  The record amply demonstrates that Mr. Isaacs and Mr. Gleason *both* share personal responsibility for noncompliance with the court-ordered discovery schedule and with subsequent court orders regarding their discovery obligations.[5]  The district court concluded, based on its review of the record, that Mr. Isaacs and Mr. Gleason are both responsible for those discovery failures:

> [T]he procedural history of this case makes clear that the Attorneys' noncompliance with the Court's orders persisted over a period of weeks, if not months, in the face of numerous warnings from the Court. (*See, e.g.*, Dkt. #27 at 2 ("Plaintiff is cautioned that future failures to meet the discovery deadlines set forth in the parties' case management plan or this Court's rules of individual practice will not be tolerated."); Dkt. #30 at 2 ("If, however, Plaintiff continues to neglect her

---

[5] The circumstances of this case are a far cry from Appellants' cases like *Naviant Marketing Solutions*, in which the discovery delays were solely attributable to a party's "shortage of employees" and "serious financial difficulties," and the district court "d[id] not make any specific findings regarding inappropriate or sanctionable conduct on the part of [the] attorneys," nor did "the record . . . support such a finding."  *Naviant Mktg. Sols., Inc. v. Larry Tucker, Inc.*, 339 F.3d 180, 182–84 (3d Cir. 2003) (cited in App. Br. 28 n.66); *see also, e.g.*, *Lambert v. Jariwala & Co.*, 2022 WL 2439861, at *1–2 (D.N.J. Apr. 28, 2022) ("Plaintiffs did not respond to attempts by their counsel to reach them.") (cited in App. Br. 23–24 n.56 & 29 n.70); *Sullivan-Blake v. FedEx Ground Package Sys., Inc.*, 2021 WL 3563388, at *12–13 (W.D. Pa. Aug. 12, 2021) (cited in App. Br. 23–24 n.56 & 29 n.70) (plaintiff did not respond to "counsel's repeated attempts to reach her").

31

responsibilities in this case, the Court will take appropriate action at that time.")).

SA024.

Those factual findings are not clearly erroneous. Both Mr. Isaacs and Mr. Gleason were counsel of record for Plaintiff at all relevant times. Counsel for Mr. Dylan addressed correspondence regarding Plaintiff's numerous discovery deficiencies to both attorneys. JA230, JA232–34, JA236–37. After Mr. Isaacs and Mr. Gleason failed to abide by discovery deadlines, Mr. Dylan filed several letters with the district court, which were served on Mr. Gleason and Mr. Isaacs via ECF (and sent to them by email pursuant to Judge Failla's local rules). JA085–86, JA089–90, JA093–95. Neither attorney disputes receiving via ECF the district court's May 24 and June 1, 2022 Orders directing Plaintiff's compliance with discovery. Yet neither Mr. Isaacs nor Mr. Gleason acted promptly to remedy the discovery deficiencies, despite being on notice that should "Plaintiff continue[] to neglect her responsibilities in this case, the Court will take appropriate action at that time." JA092. Both attorneys then attended the July 15, 2022 hearing, at which the district court warned them that the discovery failures were unacceptable: "I do want to make clear *to Mr. Isaacs and to Mr. Gleason* . . . that you should have produced these things earlier. You need to produce them now." JA121 at 22:19–23 (emphasis added). The district court's findings that *both* Mr. Isaacs and Mr. Gleason violated discovery deadlines and the district court's orders "over a period of weeks, if not

32

months, in the face of numerous warnings from the Court" were not clearly erroneous. SA024. Rather, the record firmly confirms the district court manifestly got it right.

In fact, contrary to Appellants' contentions, the district court actually took pains to personalize the sanctions imposed on Mr. Isaacs and Mr. Gleason. In imposing greater sanctions on Mr. Isaacs, Judge Failla explained that Mr. Isaacs "handled" "the bulk of the discovery component of the litigation" and had "first-chair responsibilities," warranting a somewhat higher (though still modest) sanction of $5,000. SA27–28 n.18. At the same time, the court noted, Mr. Gleason "was copied on the relevant correspondence, participated in the relevant conferences, and appeared in the litigation as co-counsel," warranting a sanction of just $3,000. *Id.* Appellants have not suggested a different apportionment of the sanctions award would be more appropriate, let alone explained why the district court's thoughtful consideration of each attorney's role constituted an abuse of discretion.

Far from relying on "[g]eneralities," App. Br. 30, the district court made detailed factual findings about the conduct of each attorney, for example, describing Mr. Isaacs' representations "that he would review his client's computer with her, and 'produce every single document that I can,'" SA008–09, and Mr. Gleason's own purported failed "efforts to obtain additional responsive documents from his client." SA011. Such findings—which Appellants do not come close to demonstrating are

33

clearly erroneous—amply support the conclusion that Mr. Isaacs and Mr. Gleason each were personally responsible for the violation of discovery orders, while the different award amounts imposed on the two attorneys represent precisely the "careful apportionment of the costs among the responsible parties" that the Second Circuit has instructed district courts to perform. *In re Yellen & Herstic*, 804 F.2d 191, 193 (2d Cir. 1986). And in any event, courts have held that counsel of record may be sanctioned even where a different attorney to whom responsibilities were delegated was the "attorney 'advising' [the client] during the discovery period." *Stuart I. Levin & Assocs., P.A. v. Rogers*, 156 F.3d 1135, 1140–41 (11th Cir. 1998).

In short, the district court in no way abused its discretion in imposing a $5,000 award on Mr. Isaacs and a $3,000 award on Mr. Gleason. Its exercise of discretion should be affirmed.

## III. Appellants Were Accorded Due Process Before Sanctions Were Imposed

Appellants say they were "[e]ntitled to a [h]earing" before Judge Failla sanctioned them. App. Br. 30. That argument again has no merit. As this Court has explained, "[a]s a general rule, a court is not obliged to give a formal warning that sanctions might be imposed for violation of the court's orders." *Fonar Corp. v. Magnetic Resonance Plus, Inc.*, 128 F.3d 99, 102 (2d Cir. 1997). Appellants themselves concede "an evidentiary hearing is not invariably required for every sanctions motion." App. Br. at 35; *see Rossbach v. Montefiore Med. Ctr.*, 81 F.4th

34

124, 138 (2d Cir. 2023) ("[A] motion for sanctions does not automatically require an evidentiary hearing at all."); *Schlaifer Nance & Co. v. Estate of Warhol*, 194 F.3d 323, 335 (2d Cir. 1999) ("[T]he opportunity to be heard does not necessarily entitle the subject of a motion for sanctions to an evidentiary hearing."). "This is especially so when the sanctioning court's decision is 'based on well-known facts contained in the existing record.'" *Martin v. Giordano*, 185 F. Supp. 3d 339, 368 (E.D.N.Y. 2016) (quoting *Schlaifer*, 194 F.3d at 335).

Here, the district court went well beyond what due process requires. The court discussed the possibility of sanctions over the course of several months during multiple hearings. The court warned as early as May 24, 2022 that "future failures to meet the discovery deadlines . . . will not be tolerated." JA088. During the July 15, 2022 hearing, the district court gave Appellants the opportunity to be heard and warned again, "at some point, I actually have to abide by the written warnings that I give." SA009. At the July 28, 2022 hearing, the district court gave Appellants yet another fulsome opportunity to explain their discovery failures. JA132–33 at 2:14–3:11. Mr. Dylan then sought the court's leave to move for sanctions, which Appellants opposed, and the parties extensively briefed that motion. Mr. Dylan's 25-page motion brief, accompanied by twelve exhibits, provided Mr. Isaacs and Mr. Gleason with ample notice of the legal and factual bases of the sanctions sought against them. In particular, Mr. Dylan's opening brief discussed the May 24 and

June 2 Orders in detail, JA186–87, and cited them as evidence of the numerous "warnings" and "prior orders directing them to comply with discovery deadlines" that Appellants violated. JA193–94; *see also* JA201 (quoting the May 24 and June 2 Orders and noting that "Mr. Isaacs and Mr. Gleason were warned by the Court many times that they would face consequences . . . ."). Mr. Isaacs and Mr. Gleason had the full opportunity to respond. They had their own counsel representing them in opposing sanctions. JA241. They submitted a 20-page brief opposing the motion, JA241–66, along with an accompanying affirmation from Mr. Isaacs. JA238–39. After Mr. Dylan submitted his reply, Appellants even submitted a sur-reply letter. JA281. The Second Circuit has repeatedly upheld sanctions awards based on far less process. *See Friedman v. Radujko*, 854 F. App'x 390, 393 (2d Cir. 2021) (upholding Rule 37 sanctions award imposed without sanctioned party submitting a brief); *Sterling Promotional Corp. v. Gen. Accident Ins. Co. of N.Y.*, 86 F. App'x 441, 445–46 (2d Cir. 2004) (same).

Appellants were also granted sufficient opportunity to be heard. Appellants' argument appears to boil down to their gripe that the district court did not specifically hear argument on the motion for sanctions. App. Br. 32–33. But district courts are not required to hear oral argument before issuing sanctions. *See Schlaifer*, 194 F.3d at 335 ("[W]e cannot say that the District Court violated due process by denying the appellants' request for a hearing."). "[T]he opportunity to submit written briefs"—

36

as Appellants had here—"may be sufficient to provide an opportunity to be heard." *Id.*; *see also Int'l Ore & Fertilizer Corp. v. SGS Control Servs., Inc.*, 38 F.3d 1279, 1286 (2d Cir. 1994) ("Appellants . . . had notice from [the sanctions] motion, and an opportunity to be heard by opposing the motion in the affidavit submitted."), *cert. denied*, 515 U.S. 1122 (1995). Tellingly, Appellants' main case, *Schlaifer*, *see* App. Br. 34 n.87 & 35 nn.88–89, held that the sanctioned parties "were afforded both adequate notice and an opportunity to be heard," even though no evidentiary hearing or oral argument was held in that case and the court issued sanctions totaling $400,000—fifty times the total amount of sanctions awarded in this case. *Schlaifer*, 194 F.3d at 331, 336.

In any event, Appellants *did* have an opportunity to present multiple oral arguments in their defense. At the July 15 hearing, Judge Failla specifically warned Appellants that she would "absolutely . . . entertain sanctions motions" and that she had "every expectation that there's a sanctions motion in the offing," which Defendant could "begin preparing." JA117 at 18:14–20, JA121 at 22:11–12. She emphasized that she was "disappointed and dissatisfied with the productions that have been made," and that Mr. Isaacs and Mr. Gleason "had every warning," both "oral" and "written" and "don't need me to repeat it again . . . because you understand the consequences if you don't" produce documents. JA121–22 at 22:25–23:9. The district court then asked Mr. Isaacs if there was "[a]nything else you want

37

to tell me in this conversation" and Mr. Isaacs—who had argued extensively in defense of his conduct earlier in the hearing, JA113–15 at 14:22–16:16, declined the opportunity to offer further argument in his defense.  JA122 at 23:13–16.

Two weeks later, at the in-person July 28, 2022 hearing, the district court told Mr. Isaacs and Mr. Gleason that "I've got discovery deadlines that weren't complied with," "I fear you're going to tell me you want me to excuse your noncompliance with the deadlines," and "I don't like feeling as though I am being played," JA133 at 3:9–10, JA144 at 14:5–11, and defense counsel explained why "we believe the Court should impose sanctions, under Rule 37(b)(2)."  JA154–55.  Mr. Isaacs and Mr. Gleason were then given a fulsome opportunity to address the discovery issues. Notably, both offered substantially the same arguments as Appellants present here, including that they did nothing wrong because Plaintiff herself did not provide documents and emails they had requested.  *Compare* App. Br. 13, 23–25, *with* JA134–35, JA138–39, JA141, JA160–63.  Appellants have not offered any argument on appeal that they contend they were unable to present to the district court before the award of sanctions was entered.  Nor have they cited any case to suggest that the district court had to hold an oral argument to let them repeat their arguments in open court yet again.

In view of Appellants' ample opportunities to defend their conduct, both orally and in writing, "it stretches the imagination to argue that [they] did not have

38

notice of, or the opportunity to be heard about, the sanction imposed." *Thomas E. Hoar, Inc. v. Sara Lee Corp.*, 900 F.2d 522, 527 (2d Cir. 1990) (citation omitted).

## IV. The District Court Did Not Abuse Its Discretion In Imposing A Sanctions Award Appellants Argue Is "Unjust"

"[I]n determining whether a sanction is 'just,' the record should be reviewed to ascertain whether the district court abused its discretion." *Daval*, 951 F.2d at 1366. The record here fully supports the district court's exercise of discretion imposing modest sanctions. Mr. Isaacs and Mr. Gleason were obligated to inquire about the evidence in Plaintiff's possession before filing the lawsuit, and certainly by May 30, 2022, the date by which the district court explicitly ordered them to respond to Mr. Dylan's Requests for Production. At a minimum, as the district court explained, Mr. Isaacs and Mr. Gleason were aware "there were numerous responsive emails in the possession, custody, and control of Plaintiff" as of June 1, 2022. SA020. That day, Mr. Dylan produced dozens of emails to or from Plaintiff that Mr. Dylan obtained pursuant to third-party subpoenas to Plaintiff's relatives. SA020. Yet Mr. Isaacs and Mr. Gleason did not seek to obtain those records from their client until some two months later, after the July 15, 2022 Order, and well after the June 30, 2022 deadline for the substantial completion of documents. Appellants' failure to timely produce documents forced Mr. Dylan to depose Plaintiff's siblings—key

witnesses in the case—without the benefit of highly relevant documents from Plaintiff herself.  SA022.

The $5,000 and $3,000 sanctions awards are, as the district court noted, "but a fraction of the fees and expenses incurred by Defendant."  SA024.  As a result of Appellants' misconduct, Mr. Dylan was forced to repeatedly follow up with Appellants on outstanding discovery, to write numerous letters to the district court regarding the discovery delays, to prepare for and attend court conferences relating to those discovery delays, and ultimately to seek sanctions for those delays.  The district court, which found Appellants' conduct "constitutes willfulness," SA023, could have awarded much more severe sanctions.  *Daval*, 951 F.2d at 1367 ("Severe sanctions are justified . . . when the failure to comply with a court order is due to willfulness or bad faith, or is otherwise culpable.").  But after assessing the specifics of Appellants' circumstances, including "the fact that each of the Attorneys is a sole practitioner, who very likely took this case on a contingency basis," SA028, Judge Failla determined that "an award of full expenses" would be "unjust," and therefore limited her award to the modest sum of $8,000.  SA027.

There is nothing unjust—let alone discretion-abusing—about a modest sanctions award following flagrant violations of court orders and discovery deadlines over a period of many months.  To decline to award any sanctions at all,

as Appellants' suggest,[6] would invite similar discovery abuses in the future.  *Cf. S. New England Tel.*, 624 F.3d at 149 (recognizing that Rule 37 sanctions "are intended to serve a general deterrent effect").  The district court appropriately exercised its discretion in crafting a modest and just penalty for Mr. Isaacs and Mr. Gleason's egregious discovery violations.

## CONCLUSION

For the foregoing reasons, this Court should affirm the district court's sanctions order.

---

[6] Appellants argue the sanctions award "is unjust because they did not personally violate the July 15 Order, did not counsel the violation of any court order, and took steps in good faith to secure compliance by their client of the July 15 Order."  App. Br. 38.  But as Appellants concede elsewhere in their brief, the district court did not "predicate sanctions on the July 15 Order," SA022 n.10 (quoted in App. Br. 23–24).  Rather, the district court imposed sanctions principally for Appellants' violation of the May 24 and June 2 Orders directing Plaintiff and her counsel to abide by discovery deadlines.

Dated: May 1, 2024

Respectfully submitted,

*/s/ Orin Snyder*

Orin Snyder
Brian Ascher
Jeremy Bunting
Alexandra Perloff-Giles
Carolyn Ye
GIBSON, DUNN & CRUTCHER LLP
200 Park Avenue
New York, NY 10166
Tel: (212) 351-2427

*Attorneys for Defendant-Appellee*

**CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMITATION, TYPEFACE REQUIREMENTS, AND TYPE STYLE REQUIREMENTS**

1.      This brief complies with the length limits of Second Circuit Local Rule 32.1(a)(4)(A) because it contains 10,153 words, excluding the parts of the brief exempted by Federal Rule of Appellate Procedure 32(f); and

2.      This brief complies with the type face requirements of Federal Rule of Appellate Procedure 32(a)(5)(A) and the type style requirements of Federal Rule of Appellate Procedure 32(a)(6) because it has been prepared in a proportionally-spaced typeface using Microsoft Word for Microsoft 365 (Version 2308) in 14-point Times New Roman font.


                                        */s/ Orin Snyder*
                                        Orin Snyder