# 23-7492-CV

*UNITED STATES COURT OF APPEALS*
*FOR THE SECOND CIRCUIT*

J.C.,

Plaintiff,

-and-

DANIEL W. ISAACS and PETER J. GLEASON,

Respondents-Appellants,

- against -

ROBERT ALLEN ZIMMERMAN a/k/a
BOB DYLAN,

Defendant-Appellee.

*On Appeal from a Judgment of the United States*
*District Court for the Southern District of New York*

**APPELLANTS' REPLY BRIEF**

Nathaniel B. Smith, Esq.
Law Office of Nathaniel B. Smith
225 Broadway – Suite 1901
New York, New York 10007
(212) 227-7062
Attorney for Respondents-Appellants

Dated: May 22, 2024

TABLE OF CONTENTS

ARGUMENT ............................................................................. 4

    I. Defendant's Ad Hominem Attacks Are False and Irrelevant. ..... 4

    II. A Party's Status Is Irrelevant. ...................................................... 7

    III. Plaintiff's Attorneys Did Not Violate Any Discovery Order ....... 8

    IV. None of the Relevant Factors Support Sanctions ..................... 11

        1. Willfulness of the Non-Compliant Party ......................... 12

        2. Less Drastic Sanction Option ........................................... 12

        3. Duration of Noncompliance ............................................. 13

        4. Prior Warnings .................................................................. 13

        5. Importance of Discovery .................................................. 14

        6. Prejudice ............................................................................ 17

    V. Defendant Misunderstands The Hearing Issue. ....................... 17

CONCLUSION ...................................................................... 18

Certificate of Compliance ........................................................ 20

## TABLE OF AUTHORITIES

**CASES**

*Arlinghaus v. Ritenour*, 622 F.2d 629 (2d Cir. 1980)..............................16

*Box v. A & P Tea Co.*, 772 F.2d 1372 (7th Cir. 1985)............................16

*Friedgood v. Axelrod,* 593 F. Supp. 395 (S.D.N.Y. 1984)........................6

*Heirs of Fruge v. Blood Services,* 506 F.2d 841(5 Cir. 1975) .................16

*In re Nortel Networks Corp. Sec. Litig.*, 539 F.3d 129 (2d Cir. 2008) ....16

*Kiobel v. Millson*, 592 F.3d 78 (2d Cir. 2010)...........................................6

*Schlaifer Nance Co., Inc. v. Est. of Warhol*,194 F.3d 323 (2d Cir. 1999) . 6

*United States v. Restrepo,* 986 F.2d 1462 (2d Cir. 1993) ........................16

*Universal City Studios, Inc. v. Corley,* 273 F.3d 429 (2d Cir. 2001) ......16

**STATUTES**

28 U.S.C. § 1927 ........................................................................................5

Rule 11 of the Federal Rules of Civil Procedure......................................5

Rule 11(b)(3) of the Federal Rules of Civil Procedure .............................6

Rule 37(b) of the Federal Rules of Civil Procedure ..................................6

*ARGUMENT*

I.   *Defendant's Ad Hominem Attacks Are False and Irrelevant*

Although Defendant-Appellee repeatedly contends (*see* Brief at pp.
1, 2, 12, 20, 25 & 39) that the Plaintiff's Attorneys failed to conduct a
proper pre-suit investigation before filing suit, there are two important
points about this contention that must be made clear at the outset:

- it is *utterly false*; and

- it is *wholly irrelevant* to the issue of whether the lower court
  properly sanctioned the Plaintiff's Attorneys for their
  purported failure to comply with a discovery order.

The argument is false because there is specific and direct evidence
demonstrating that a proper pre-suit investigation was conducted (JA
238-29 at ¶¶ 4-6 (Issacs Affirmation, detailing the pre-suit
investigation)).  Indeed, the Defendant offers no support—other than
the proclamations of his lawyer—for his contention about a "patently
inadequate" pre-suit investigation. (Brief at p. 1.)

The Defendant also misrepresents the record.  In his Brief, the
Defendant states that "Appellants failed to conduct a sufficient pre-suit
investigation before filing this inflammatory lawsuit against a public

figure." (Appellee's Brief at p. 25.) As support for this contention, the Defendant cites the lower court's decision. (*Id.*) But that citation does not support the assertion. The lower court stated: "While it might have behooved everyone in this litigation for Plaintiff's Attorneys to have conducted a *more robust* pre-suit investigation, or to have ensured ex ante that Plaintiff understood and was willing to comply with her discovery obligations, that is beyond the scope of this Rule 37(b) motion." (SA 28) (emphasis added). Since a more robust investigation is obviously very different from an insufficient investigation, the record citation provided to the Court by the Defendant does not support the Defendant's contention that the Plaintiff's Attorneys failed to conduct a sufficient pre-suit investigation.

Moreover, the Defendant's arguments about the pre-suit investigation are also irrelevant to this appeal. The Defendant could have filed a motion for sanctions under Rule 11 of the Federal Rules of Civil Procedure, 28 U.S.C. § 1927, or the lower court's inherent authority. That motion would have squarely put at issue the question of whether the Plaintiff's factual claims in her complaint lacked any

6

support.[1]  But he didn't.  Instead, the Defendant made a decision to file a motion under Rule 37(b) against the Plaintiff's Attorneys (not the Plaintiff) for purported violation of a discovery order.[2]  As such, the Defendant's arguments about the pre-suit investigation are wholly beside the point.

---

[1] Rule 11 provides that by filing a pleading in federal court, a party and/or the party's counsel "certifies that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances . . . (3) the factual contentions have evidentiary support."  FRCP Rule 11(b)(3).  In the Second Circuit, a factual contention is sanctionable "only when the specific allegation is utterly lacking in support."  *Kiobel v. Millson*, 592 F.3d 78, 81 (2d Cir. 2010).  In other words, "a claim is colorable when it reasonably *might* be successful, while a claim lacks a colorable basis when it is utterly devoid of a legal or factual basis." *Schlaifer Nance Co., Inc. v. Est. of Warhol*, 194 F.3d 323, 337 (2d Cir. 1999) (emphasis in original).  Under this standard, an attorney is not required to disbelieve his own client simply because opposing counsel presents him with evidence challenging the client's credibility.  *Friedgood v. Axelrod,* 593 F. Supp. 395, 397 (S.D.N.Y. 1984).

[2] Although the Defendant invokes generalities about "multiple discovery orders" in his Rule 37 motion papers, the Defendant's arguments about a claimed violation of a specific discovery order only addressed the July 15 Order.  *See* JA 193-94 (Defendant's memorandum of law argued that the Plaintiff's Attorneys violated the July 15 Order).  While the lower court in its decision stated that the Defendant's motion claimed that the Plaintiff's Attorneys violated "one or more" discovery orders, (SA 18-19 & n. 9), the Plaintiff's Attorneys in this appeal contend that Defendant's motion was limited to the July 15 Order and that the lower court should have limited its analysis to the July 15 Order or provided the Plaintiff's Attorneys with the opportunity to respond to the claim that they violated other discovery orders.  (Appellants' Brief at pp. 30-31.)

7

## II.    *A Party's Status Is Irrelevant*

Rather than confront the proper parameters of his Rule 37(b) motion, the Defendant in his Brief urges this Court to affirm based on a thinly veiled play for sympathy.  The Defendant attacks the Plaintiff's Attorneys for having the temerity to believe their client because the Defendant is a "beloved icon" who was, according to the Defendant, being shaken down by a "troubled woman" and her extortionate lawyers, who sought a "quick" million-dollar "payout."  (Brief at pp. 1, 5 n. 1, 6, & 7.)

As the Defendant did in the lower court, the Defendant asks this Court to affirm sanctions based on the Defendant's high status and the relative status of the Plaintiff and her "solo practitioner" lawyers.   In determining the merits of this appeal, however, the Court should focus on the merits of the purported Rule 37 violation, not the Defendant's false and irrelevant side-show about the Defendant's "beloved" status as "one of the most famous public figures on the planet."  (Brief at p. 6.)

Thus, the Defendant should be stuck with the motion that he made, not the motion that he tactically decided not to make.  And when that Rule 37 motion is analyzed and the irrelevant noise and *ad*

*hominem* attacks in Defendant's Brief are put to one side, reversal is the only proper result because the Plaintiff's Attorneys did not violate the lower court's discovery order or counsel the Plaintiff to do so.

### III. Plaintiff's Attorneys Did Not Violate Any Discovery Order

In their Brief, the Plaintiff's Attorneys argued that Rule 37 sanctions must be based on a specific order to produce explicit discovery. (Appellants' Brief at pp. 16 & 21 n. 50.) They also argued that an attorney can only be sanctioned under Rule 37 for personally violating a discovery order or advising a client to do so. (*Id.* at p. 23 n. 56.)

Based on these well-established parameters for Rule 37 sanctions, which the Defendant does not dispute, the Plaintiff's Attorneys argued that the May 25 Order, the June 2 Order, and the July 15 Order cannot form the basis for sanctions.

In his Brief, the Defendant agrees that the July 15 Order was not the predicate for the lower court's sanctions decision,[3] but continues to

---

[3] Appellee's Brief at p. 26 n. 3) ("the trial court 'decline[d] to predicate sanctions on the July 15 Order' "); *see also id.* at p. 41 n.6) ("the district court imposed sanctions principally for Appellants' violation of the May 24 and June 2 Orders directing Plaintiff and her counsel to abide by discovery deadlines.")

maintain that the May 24 Order and the June 2 Order constituted proper grounds for the lower court's sanctions decision.

In making these arguments, however, the Defendant fails to address the points the Plaintiff's Attorneys made in their Brief about the May 24 and June 2 Orders. Defendant also distorts the record.

In their Brief, the Plaintiff's Attorneys argued that the May 24 Order directed the Plaintiff to serve responses and objections (not documents) by May 30 and that Issacs served interrogatory responses and objections on May 30 and document responses and objections on May 31. Since May 30 was Memorial Day, a federal holiday, the Plaintiff's Attorneys argued that Issacs substantially complied with the deadline, a position confirmed when the Defendant dropped his complaint about the holiday delay after Issacs served the formal responses on May 31. (Appellants' Brief at pp. 19-21.)

The Defendant, in his Brief, does not address either of these points. He does not acknowledge that the May 30 deadline fell on a federal holiday, and he ignores the fact that he dropped his complaint about the one-day delay.

Rather than address the Appellants on the merits, the Defendant

distorts the record. The Defendant states in his Brief that "the district court detailed Appellants' many violations of its discovery orders, most significantly Appellants' failure to produce *documents* in violation of the district court's May 24 and June 1[sic, June 2] orders." (Brief at p. 18) (emphasis added) (citing "*see generally* SA 005-10.").

But neither the May 24 nor the June 2 Orders required the production of documents. (JA 88 & 91-92.) And the Defendant's citation signal to "*see generally*" the lower court decision does not change that fact, as a review of the decision and the record shows. The May 24 Order and the June 2 Order did not require the production of documents, and the suggestion by the Defendant to the contrary is misleading.

The Plaintiffs' Attorneys also argued in their Brief that the June 2 Order cannot form the basis for a sanctions award because the June 2 Order does not contain a specific direction to produce explicit discovery. (Brief at pp. 21-22.) Other than sweeping generalities, the Defendant does not address or seek to counter this point either. (Appellee's Brief at pp. 28-29.) Simply put, the Defendant cannot point to any information that the Plaintiff's Attorneys failed to provide pursuant to the June 2

Order. The only directions contained in the June 2 Order were a direction to the Clerk to terminate the Defendant's letter motion about the one-day delay in serving discovery responses and the direction by the Court as follows: "The Court expects that Plaintiff will heed [its prior] warning and meet her obligations in this case without Court intervention." (JA 92.) For the reasons already noted in Appellants' Brief, this general direction cannot be the basis upon which to predicate a sanction against the Plaintiff's Attorneys.

Since the Defendant admits that the July 15 Order was not a proper basis for sanctions and since neither the May 24 nor June 2 Orders can be a proper basis for sanctions, the lower court's decision should be reversed.

## IV. *None of the Relevant Factors Support Sanctions*

Since the Plaintiff's Attorneys did not violate a discovery order or counsel the Plaintiff to violate a court order, that ought to end the analysis. Nevertheless, the Defendant urges affirmance based on several factors that are often examined in the context of a Rule 37(b) motion. Yet, these factors either confirm that the lower court's determination was wrong or are neutral on the issue.

*1. Willfulness of the Non-Compliant Party.* The lower court held that the Plaintiff's Attorneys did not act in bad faith and that their failure to comply with the July 15 Order was outside their control. (SA 14 n. 7 & SA 22 n. 10.) Nevertheless, the lower court found "willfulness" based on a "blasé attitude" toward their discovery obligations. (SA 23.)

In making this determination, which is essentially a factual finding about intent,[4] the lower court correctly noted that noncompliance with a discovery order can be found to be willful when the order is clear and the failure to comply is not due to factors beyond the person's control. (*Id.*) Here, the lower court found that the Plaintiff's Attorneys could not be faulted for failing to produce documents outside their control and explicitly rejected the claim that they acted in bad faith. Thus, there is no basis for a finding that the Plaintiff's Attorneys acted in willful defiance of a discovery order.

*2. Less Drastic Sanction Option.* The Plaintiff decided to drop her claims after her name was exposed on the Internet as being the victim

---

[4] As argued in our main Brief, a disputed factual finding of fact should be determined at a hearing, not on affidavits. (Appellants' Brief at pp. 31-35.)

of sexual abuse.  Thus, the Plaintiff agreed to the most extreme type of sanction available under Rule 37 —dismissal—rather than continue with her case.  An additional monetary sanction of any size—"symbolic" or otherwise—on the attorneys because the Plaintiff did not want to comply with a document production order is manifestly unjust because the Plaintiff's Attorneys did not personally violate the discovery order or counsel the Plaintiff to do so.  The sanction, therefore, served no proper purpose.

3. *Duration of Noncompliance.*  The duration of the time period of any noncompliance with a discovery order in this case is exceedingly short.  Pursuant to the July 15 Order, the deadline for Plaintiff's first document production was set for July 22, and six days later, on July 28, she agreed to dismiss her case.  And assuming that Issacs was late in serving formal document responses in compliance with the May 24 Order, he was only one day late.  These are exceedingly brief periods of time.

4. *Prior Warnings.*  Although it is certainly correct that the lower court issued warnings to the Plaintiff to comply with her discovery obligations, the record also shows that the Plaintiff's Attorneys did

make good faith efforts to comply with the discovery obligations and the failure to produce documents was outside their control. There is no basis in the record for the Defendant's speculations about the Plaintiff's Attorneys' privileged communications with their client about the need to produce specific documents to the Defendant. Since the Plaintiff's Attorneys did seek to secure compliance, the prior-warnings factor is neutral or inapplicable because the Plaintiff's Attorneys did, in fact, heed the lower court's prior warnings.

5. *Importance of Discovery*. The Defendant makes much about the third-party discovery that he obtained from the Plaintiff's siblings. (*See, e.g.* Appellee's Brief at pp. 1.) (suggesting that the siblings' emails "resulted in" the dismissal of the action). The facts are not as the Defendant portrays them.

The emails consisted entirely of communications between the Plaintiff and her siblings *after* the action was commenced and *after* the Plaintiff's identity had been revealed on the Internet. (JA 327-413.) In those communications, the siblings asked specific questions about the Plaintiff's claims and events at issue—events that occurred many years ago when the Plaintiff was a teenager—and implored the Plaintiff to

keep them uninvolved in the matter. (JA 341-42.) Since the emails were generated many decades later and only after the lawsuit was filed, the emails are of limited relevance and they certainly do not establish that the Plaintiff's claims lack merit. In addition, it makes no sense for the Defendant to attack the Plaintiff's Attorneys for not securing or reviewing those emails as part of their pre-suit investigation because the emails did not exist before the action was commenced.

Although the Defendant also argues that the emails constituted "critical" evidence supporting its motion for sanctions (*see* Appellee's Brief at p. 1), the Defendant did not even submit the emails as exhibits in his motion. Instead, nine months after the motion was submitted, the lower court requested that the Defendant provide the lower court with copies of the emails, and one day after getting the emails, the lower court issued its sanctions determination. (JA 282, 321 & SA 1.) Far from critical evidence, the emails were not even important enough for the Defendant to consider them relevant to the motion.

In a footnote, the Defendant also raises an entirely new argument about the Plaintiff's emails in the possession of Issacs as of July 15. (Appellee's Brief at p. 26 n.3.) Settled law consistently holds that

raising an issue merely in a footnote is insufficient to preserve a point for appellate review.[5] On that basis alone, the argument should be rejected.

Moreover, the Defendant recognizes that the issue about these documents was not raised with the lower court. In his footnote, the Defendant invokes the doctrine that an appellate court can affirm a lower court decision on any alternative ground fairly supported by the record. (Appellee's Brief at 26 n. 26.) While it is certainly correct that this Court can affirm on alternative grounds, it is also correct that this Court will not address new arguments raised for the first time on appeal, unless to avoid manifest injustice.[6] And it is equally obvious that the parties must have had the opportunity to address those alternative grounds in the lower court.[7] Since the argument raised in a

---

[5] *Universal City Studios, Inc. v. Corley,* 273 F.3d 429, 445 (2d Cir. 2001) ("[W]e have repeatedly ruled that arguments presented to us only in a footnote are not entitled to appellate consideration."); *United States v. Restrepo,* 986 F.2d 1462, 1463 (2d Cir. 1993) ("We do not consider an argument mentioned only in a footnote to be adequately raised or preserved for appellate review.").

[6] *In re Nortel Networks Corp. Sec. Litig.*, 539 F.3d 129, 133 (2d Cir. 2008).

[7] *Arlinghaus v. Ritenour*, 622 F.2d 629, 638 (2d Cir. 1980) ("Any issue injected into the appeal by the court itself must have been adequately presented below, and the parties must have had a full opportunity to develop the relevant facts.") (citing *Heirs of Fruge v. Blood Services,* 506 F.2d 841, 844 n.2 (5 Cir. 1975) (although an appellate court can affirm on alternative grounds, the "underlying assumption of this proposition is, of course, that the parties had a full and fair opportunity to

footnote by the Defendant for the first time on appeal was not properly presented or addressed in this Court or the lower court, the Court should reject the unpreserved contention.

6. *Prejudice.* The Defendant claims he was prejudiced because he was "forced" to take the siblings' depositions without having access to the siblings' emails. (Appellee's Brief at p. 19.) This position is substantially weakened by the fact that the siblings did provide the discovery pursuant to third-party subpoenas of their communications with the Plaintiff. And that position is further weakened because the Defendant was not "forced" to take the depositions at that time. Pursuant to the lower court's scheduling order, party depositions were directed to proceed *before* third-party depositions (JA 64 ¶ 8(d)(iii)), and nothing in the record shows that the Defendant had to go forward with the third-party depositions in an unprepared state.

## V. *The Defendant Misunderstands The Hearing Issue.*

In response to the argument about the need for a hearing, the

---

develop facts relevant to the decision."). *See also Box v. A & P Tea Co.*, 772 F.2d 1372, 1376 (7th Cir. 1985) ("True, we may affirm a summary judgment on any ground that finds support in the record, but the ground must have been adequately presented in the trial court so that the non-moving party had an opportunity to submit affidavits or other evidence and contest the issue.") (citations omitted).

Defendant mischaracterizes the point made by the Plaintiff's Attorneys. They are not contending that the lower court denied them a constitutional right to due process. Instead, they contend that to the extent that there are any issues of fact relevant to the sanctions motion, that issue should have been resolved at a hearing, not on affidavits.

To dispense with the hearing requirement, the lower court stated in its decision that it was "drawing every inference in the Attorney's favor." (SA 19.) But it manifestly did not do so when it made findings against the Plaintiff's Attorneys about their willful non-compliance; about their contact and lack of contact with their client; and about their "blasé" attitude about discovery. (*See* Appellant's Brief at pp.33-34.) To the extent that there are any material and disputed issues of fact, the Plaintiff's Attorneys contend that a hearing is required to find those facts.

## *CONCLUSION*

Attorneys are required to serve their clients and the Courts, and discovery is one of the important areas in the administration of justice where attorneys must seek compliance in good faith with the client's obligations to turn over discoverable information. We do not controvert

or dispute that basis proposition of law—indeed, the Plaintiff's Attorneys embraced it through their good faith efforts to secure compliance, and nevertheless sanctions were imposed.

Discovery sanctions should not be freely or lightly imposed on the attorney when it is the client—and only the client—who is responsible for the failure to comply with a discovery order. Attorneys are not bonding companies, and an attorney representing the noncomplying party should not be automatically liable for sanctions when the decision to resist compliance is made by the client. Under settled rules of law, an attorney should be held responsible when the attorney personally fails to comply with a discovery order or counsels the client to do so.

That didn't happen here, and the sanctions determination should be reversed.

Dated: May 22, 2024

                                         *s/Nathaniel B. Smith*
                                         _____

                                         Nathaniel B. Smith
                                         Attorneys for Appellants

*Certificate of Compliance*
*With Rule 32(a) Type-Volume Limitation,*
*Typeface Requirements and Type Style Requirements*

1.  This brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B) because this brief contains 3,765 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii)

2.  This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because this brief has been prepared in a proportionally spaced typeface using Microsoft Word in font size 14 with Century Schoolbook type for text and font size 12 for footnotes.

Dated: May 22, 2024

*s/Nathaniel B. Smith*
_____
Nathaniel B. Smith
Attorney for Appellants